IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

TANYA BLACK YOUNG,               )
                                 )
        Plaintiff,               )
                                 )
v.                               )      CIVIL ACT. NO.  2:11CV889-CSC
                                 )             (WO)
CAROLYN W. COLVIN,               )
Acting Commissioner of Social Security,[1]   )
                                 )
        Defendants.              )

**MEMORANDUM OPINION AND ORDER**

On September 10, 2007, the Plaintiff, Tanya Black Young, protectively filed

applications for disability insurance benefits under Title II of the Social Security Act,  42

U.S.C. §§ 401, *et seq.*, and for supplemental security income under Title XVI of the Social

Security Act,  42 U.S.C. § 1381, *et seq.*  (R. 136, 141).  Young alleged that her date of

disability onset was December 15, 2006.  (R. 137-38).  Her application was denied at the

initial administrative level.  Young then requested and received a hearing before an

Administrative Law Judge ("ALJ").  On November 16, 2009, following the hearing, ALJ

Vincent P. Intoccia also denied the claim.  (R. 26-39).  The Appeals Council rejected a

subsequent request for review on August 16, 2011. (R. 1). The ALJ's decision consequently

became the final decision of the Commissioner of Social Security ("Commissioner").  *See*

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[2]  The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3).  Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and remanded for further proceedings.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A) a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination[3] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

(1)  Is the claimant presently unemployed?
(2)  Is the claimant's impairment severe?
(3)  Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4)  Is the claimant unable to perform his or  former occupation?
(5)  Is the claimant unable to perform any other work within the economy?

---

[2]Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[3]A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

2

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); 42 U.S.C. § 405(g).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which supports the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

[The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

---

[4] *McDaniel v. Bowen,* 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  *See Sullivan v. Zebley*, 493 U.S. 521, 525 n.3 (1990). Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Sullivan*, 493 U.S. at 525 n.3; *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

### III.  ISSUES

**A.  Introduction.**   Young was born on December 26, 1972.  (R. 136).  She has a

G.E.D.  (R. 29).  Her past work experience includes work as a journeyman pipefitter.  (R.

29).  Young contends that she is unable to work due to pain in her hip; arthritis; muscle

spasms; affective disorder; chronic pain syndrome; degenerative disc disorder of the lumbar

and cervical spine; migraine headaches; premenstrual dysphoric disorder (PMDD)[5]; severe

menstrual cramps and excessive bleeding; and anxiety.  (R. 35-49).  Following the hearing,

the ALJ concluded that Young had the following severe impairments:

> osteoarthritis; arthritis; muscle spasms; affective disorder; chronic pain
> syndrome; degenerative disc disorder of the lumbar and cervical spine;
> migraine headache disorder and generalized anxiety disorder.

(R. 65).

In addition, the ALJ found that Young "has alcohol, cannabis and anxiolytic

dependence" but that her dependance on these substances "is not material to the case."  (R.

65).

The ALJ further concluded that Young's impairments or combination of impairments

did not meet or medically equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt.

P, Appendix 1.  (R. 65).  The ALJ determined that Young had the residual functional

capacity

---

[5]"Premenstrual dysphoric disorder (PMDD) is a condition in which a woman has severe depression symptoms, irritability, and tension before menstruation. The symptoms of PMDD are more severe than those seen with premenstrual syndrome (PMS)."  http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0004461/.

to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she is able to lift and/or carry ten pounds occasionally and less than ten pounds frequently. She is able to stand and/or walk at least two hours in an eight-hour workday and can sit about six hours in an eight-hour workday. The claimant can occasionally climb ramps and/or stairs but is prohibited from climbing ladders, ropes or scaffolds. The claimant can occasionally crouch, crawl and stoop and can frequently balance and kneel. The claimant should avoid concentrated exposure to temperature extremes, vibration, humidity and wetness. She should avoid all exposure to hazards including moving machinery and unprotected heights. Ms. Young is moderately limited in her ability to understand, remember and carry out detailed instructions and in the ability to maintain attention and concentration for extended periods. She is moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. She is moderately limited in her ability to interact appropriately with the general public and in the ability to accept instructions and respond appropriately to criticism from supervisors. She is moderately limited in the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. The claimant is moderately limited in the ability to respond appropriately to changes in the work setting. She can understand, remember and carry out simple instructions over an eight-hour workday with routine breaks. She is able to concentrate for at least two hour periods. The claimant's contact with co-workers, supervisors and the general public should be casual and nonconfrontational. Changes in the work place should be introduced slowly due to anxiety and dysthymia.

(R. 31).

The ALJ concluded that Young was unable to return to her past relevant work. (R. 71). However, the ALJ concluded that Young did have the residual functional capacity to perform other jobs that exist in significant numbers in the national economy, and thus, she was not disabled. (R. 71-72).

**B. Issues.** According to the plaintiff, the primary issues are as follows:

1.    Whether the ALJ's decision was based on an incomplete record that

5

was missing certain exhibits from the medical record at the time he issued his decision; and

2.  Whether, for purposes of determining eligibility for SSI benefits, the ALJ erred by failing to consider whether Young became disabled after her date last insured.

(Doc. 14 p. 3).

In addition, upon consideration of the record, the court directed the parties to brief the following issue:

whether this case should be remanded to the Commissioner because the ALJ erred as a matter of law in rejecting, failing to consider, or failing to state a basis for rejecting the plaintiff's allegations of severe menstrual pain and excessive bleeding.

( Doc. 17).

The court pretermits discussion of the issues raised by the plaintiff because this case is due to be reversed and remanded for the ALJ to determine whether Young is disabled when all of her impairments are taken into consideration, including those impairments that are caused by dysmenorrhea and menorrhagia.

### IV. Discussion

**A.    The doctrine of waiver does not prevent this court's consideration of whether the ALJ erred in rejecting, failing to consider, or failing to state a basis for rejecting the plaintiff's allegations of severe menstrual pain and excessive bleeding.**

In a social security case, the legal conclusions of the Commissioner are reviewed with close scrutiny, and the Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has

been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991). Further, although review of the Commissioner's findings of fact is limited to determining whether those findings are supported by substantial evidence,[6] this court has the duty to "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir. 1987) (citations omitted). The presumption of deference to the Commissioner's factual findings "does not permit [the court] to close [its] eyes when presented with clear error in the application of the governing statute, or with evidence insubstantial on its face." *Powell v. Heckler*, 773 F.2d 1572, 1575 (11th Cir. 1985). In this case, the court would have to deliberately "close its eyes," *id.*, to the ALJ's obvious omission of any discussion of Young's complaints of dysmenorrhea and menorrhagia – particularly in light of the testimony presented at the administrative hearing, the extensive medical record documenting these disorders, the reference to these disorders in the plaintiff's initial brief, and *the ALJ's numerous notes in his own opinion* observing (without any analysis) that the medical record establishes the presence of these underlying medical conditions. (*See* R. 45-47, 54, 67-70).

Therefore, on February 15, 2012, the court ordered the parties to submit briefs "addressing whether this case should be remanded to the Commissioner because the ALJ erred as a matter of law in rejecting, failing to consider, or failing to state a basis for rejecting

---

[6]Proceedings before the Commissioner are investigatory, not adversarial, and "it is the duty of the ALJ to investigate the facts and develop the arguments both for and against granting benefits." *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000).

the plaintiff's allegations of severe menstrual pain and excessive bleeding." (Doc. 17). The parties were initially allotted until March 4, 2013 (more than two weeks) to submit their arguments; however, on the Commissioner's motion, the court subsequently allowed the parties until March 18, 2013 (ultimately more than one month), to submit briefs on this limited issue.

The Commissioner now argues that Young has waived any consideration of the ALJ's failure to consider her dysmenorrhea and menorrhagia because she did not present arguments on the issue in her initial brief. In support of her waiver argument, the Commissioner cites *Sepulveda v. U.S. Attorney Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005), in which the Eleventh Circuit Court of Appeals held that, "[w]hen an appellant fails to offer argument on an issue, that issue is abandoned," and that passing references to issues are insufficient to raise a claim for an appeal to that court. The Commissioner also cites *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) in which the Eleventh Circuit held that, on appeal, "[i]ssues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."

*Selpuveda* and *Mclain* do not preclude this court's consideration of the relevant issues in this case because this court is *not* basing its decision on an issue that was raised merely in perfunctory manner without argument or authority. *See Sepulveda*, 401 F.3d at 1228 n.2; *McClain*, 138 F.3d at 1422. On the contrary, both sides have submitted arguments on whether the ALJ erred by failing to consider or state a basis for rejecting the plaintiff's

allegations of severe menstrual pain and excessive bleeding.  (Docs. 20, 21).   Neither *Selpuveda* nor *McClain* address a district court's authority to consider arguments presented by the parties in additional briefs on the court's own motion; both of those cases simply pertain to the Eleventh Circuit's general common-sense rule against deciding appeals on the basis of issues that have not been briefed at all.  A district court's authority to enter judgment on a question of law is well-known, even on the court's own motion and on an issue that was not raised by either party, so long as the court has provided all parties with notice and a reasonable opportunity to respond.  *Cf.* Fed. R. Civ. P. 56(f)(2) ("Judgment Independent of the [Summary Judgment] Motion. After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.").  *Selpuveda* and *McLain* are simply inapposite.

Accordingly, in light of this court's duty to consider the record in its entirety; the testimony presented at the administrative hearing; the extensive medical record which (as the ALJ noted) establishes the presence of dysmenorrhea and menorrhagia; the ALJ's deafening silence, contrary to the law of this Circuit,[7] as to his reasons for discounting Young's subjective testimony; and the arguments presented by the parties after a full and fair opportunity to address the issue, the court finds it appropriate to consider whether the ALJ

---

[7]*See Wilson v. Barnhart*,  284 F.3d 1219, 1225 (11th Cir. 2002) ("If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. ").

erred as a matter of law in failing to state any basis for discrediting Young's testimony about the pain and limiting effects of her dysmenorrhea and menorrhagia.  *See Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) ("The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions."); *Powell*, 773 F.2d at 1575 (holding that, in a social security case, the court is not permitted "to close [its] eyes when presented with clear error in the application of the governing statute, or with evidence insubstantial on its face."); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding that, reviewing courts in social security cases must abide by the applicable standard of review, but, in so doing, "we do not 'act as automatons.' We must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." (Citations omitted.)).  *Cf. McGruder ex rel. D.J. v. Astrue*, 2012 WL 5817938 (Slip Copy) (N.D. Ga. Nov. 16, 2012) ("[A]t oral argument, counsel for the Commissioner conceded that the Court may *sua sponte* remand the case on the ground that substantial evidence does not support the ALJ's factual conclusions."); *Edmond v. Commissioner*, 2011 WL 845827, at *9 (M.D. Fla. Feb. 09, 2011) ("find[ing] it appropriate to consider" an issue not raised by the plaintiff in a social security case "for two reasons: (1) the Court's duty to scrutinize the record to ensure that the ALJ's decision is reasonable and supported by substantial evidence; and (2) Defendant's presentation of the specific issue.").

**B.**    **The ALJ erred as a matter of law in rejecting, failing to consider, or failing to state a basis for rejecting the plaintiff's subjective allegations of severe menstrual pain and excessive bleeding.**

**1.**    **The ALJ erred by failing to find Young's severe menstrual pain and excessive bleeding to be severe impairments without stating any basis for doing so.**

"[A] 'severe impairment' [is] defined as 'any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities.'"  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (quoting 20 C.F.R. § 404.1520(c)).   Basic work activities are "the abilities and aptitudes necessary to do most jobs."  20 CFR § 404.1521.  An impairment can be considered as "not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031  (11th Cir. 1986); *see also Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)).  To satisfy the "mild" burden to demonstrate a severe impairment at step two, the claimant "need show only that [his] impairment is not so slight and its effect is not so minimal." *McDaniel,* 800 F.2d at 1031. The step two severity analysis is a threshold inquiry that allows only "claims based on the most trivial impairment to be rejected." *McDaniel*, 800 F.2d at 1031.

The record includes both subjective testimony and objective medical evidence that Young suffers from severe menstrual pain and excessive bleeding that would be expected to interfere with her ability to work, particularly her ability to maintain attendance.

Young testified at length at the hearing before the ALJ  regarding the pain and

limiting effects of her severe menstrual pain and excessive bleeding   (R. 45-49).

Specifically, Young provided the following testimony:

Q: I need you to tell the judge about the problems that you have with your menstrual cycle too.

A: Okay. Back like 2003-2004, (INAUDIBLE) anyway, I had dysplasia, and I had to have several, had to have -- I'm so sorry--

Q: That's okay.

A: I should have done that before I come in. Anyway, I had cervical cancer, I had to have my cervix removed, [sic[8]] but the -- after my, my third son was born, I had my tubes tied, and I had such severe menstrual cycles, it's like I'm hemorrhaging for three days, and I pass -- and I told Dr. Sh[ek]ar this, I begged him for a year. My understanding with Medicaid, is that you have to have –

Q: Hold on, hold on, hold on. Just tell him about what the problem is. You say for three days.

A: Three days I am in -- and then I'm just bleeding severely bad and passing clots that are, you know, big, they're huge clots, and then I was so weak.

Q: Is this to the, is this to the point that you are afraid or unable to leave the house, because --

A: Yes.

Q: -- of the amount of blood that you are passing?

A: And it show through my clothes, and it's just --

Q: So there's not anything as far as, you know, protection or products that you use that are secure enough, you would overwhelm a pad or a tampon.

---

[8][In June 2003, Young underwent cold knife conization following an abnormal pap smear.  (R. 307, 309, 365).]

A: I overwhelm it in 30 minutes or less. I changed sometimes three to four times an hour.

Q: Okay.

A: And then like I say, the clots, they come out, but like I'm having contractions. I mean it hurts that bad, and I've just -- you know, load the water bottle.

Q: You'll lay down with a water bottle, because of the amount of the pain --

A: The pain and the –

Q: -- and the cramping?

A: Clots, you know, the heat, you think, would make the blood thinner. This is my life trying to think, you know, I'd think that would help, and it does ease it a little bit.

Q: Okay. And you, you were talking about how tired you are during that period of time?

A: It's just-- just weak, severely weak, and I mean I can feel myself, I can feel myself changing, I get so hot, I get hot, hot. When I sleep I'm so hot.

Q: Okay. Now you say this happens every month?

A: Every month.

Q: Okay. And the -- at -- and your testimony is this lasts for at least three days at this level of severity?

A: At that level of severity, but I mean your cycle goes from seven to eight days, and it's sometimes, it comes back on the spot, I can go a week, and it will be spotting three or four days, and it's just so erratic.

Q: Okay.

A: But you know --

Q: And Dr. Sh[ek]ar references the severe menstrual cramping, and, and your, your heavy bleeding in his records, do you, do you -- has he ever checked you for say anemia during that time, do you know if you have anemia?

A: I was anemic with my children, my oldest son developed -- I was anemic, but I don't think after he's checked me for anything like that.

. . . .

Q: . . . All right, now I want you to tell the judge about your irritability. Okay.

A: It -- yes, I'm -- yeah, I'm irritable, very short tempered whenever - - especially, you know during the menstrual cycle, I do not take it out on my children. I try not to. But I just feel, I mean I can feel myself changing, and I can't stop it. I mean I can't even stop it.

(R. 45-47).

In his opinion, the ALJ regurgitated several references from the medical record documenting that Young does suffer from severe menstrual pain and excessive bleeding. (R. 67, 69, 70). As indicated by the ALJ's opinion, the medical record does document diagnoses of dysmenorrhea[9] and menorrhagia,[10] as well as premenstrual dysphoric disorder (PMDD), both before and after Young's alleged disability onset date of December 15, 2006. (R. 137-38).

---

[9]Dysmenorrhea is the medical term for pain with menstruation, commonly referred to as menstrual cramps. *See* http://my.clevelandclinic.org/disorders/dysmenorrhea/hic_dysmenorrhea.aspx; http://www.mayoclinic.com/health/menstrual-cramps/DS00506.

[10]Menorrhagia is the medical term for abnormally heavy or prolonged bleeding during menstrual periods. *See* http://www.mayoclinic.com/health/menorrhagia/DS00394 (" Menorrhagia is the medical term for menstrual periods in which bleeding is abnormally heavy or prolonged. Although heavy menstrual bleeding is a common concern among premenopausal women, most women don't experience blood loss severe enough to be defined as menorrhagia. With menorrhagia, every period you have causes enough blood loss and cramping that you can't maintain your usual activities.").

In August, 2003, Young sought medical treatment from her gynecologist for cramping and large menstrual clots and was prescribed birth control pills. (R. 307). In February, 2004, Young complained to Dr. Shekar, her general practitioner, of anxiety, agitation, and "bad menstrual cramps and PMS symptoms . . . every month." (R. 402). Dr. Shekar diagnosed her with PMDD, dysmenorrhea, and "bad PMS" and prescribed Prozac and Diazepam. (R. 403). In April, 2004, Young was again noted to have PMDD. (R. 412-13). In May, 2004, Young again complained of "bad menstrual cramps" and was again assessed with dysmenorrhea and PMDD. (R. 406). In August, 2004, she was diagnosed with PMS. (R. 471-18). Again on August 12, 2005, Young complained of swelling and cramping during her periods. (R. 259). In April, 2006, she presented with several complaints, including pain in her lower abdomen, and was again diagnosed with dysmenorrhea. (R. 432-33). On May 16, 2006, she complained of "menstrual problems" and was diagnosed with dysmenorrhea. (R. 277-78, 434). In October, 2006, Young was diagnosed with dysmenorrhea as well as low back pain; she was prescribed pain medications and directed to use a heating pad.[11] (R. 286, 441-42).

On December 17, 2007, a consulting physician diagnosed "left adnexal tenderness and

---

[11]In most of Young's visits to her physician, she complained of multiple pain symptoms, often including symptoms arising from degenerative disk disease as well as dysmenorrhea and menorrrhagia. She was regularly prescribed a variety of medicines, including pain medications and muscle relaxants. Because the record in not sufficiently developed, with respect to many of the dates on which Young sought medical treatment, it is not possible to determine from the record which medications Young's physician intended for which sources of pain, or whether her physician intended to treat both menstrual and back pain with the same prescriptions. Therefore, although Young has been prescribed a number of pain medications and muscle relaxants, the court has not listed those medications in summarizing the medical record of her dysmenorrhea and menorrhagia.

pain with menorrhagia and dysmenorrhea." (R. 363). On May 28, 2008, Young was again assessed with dysmenorrhea and PMDD. (R. 456-57). On July 14, 2008, Young presented a number of complaints to her physician, including lower abdominal pain; her physician noted "slight adnexal tenderness" and diagnosed vaginitis and menorrhagia. (462-63). On August 8, 2008, Young again complained of "bad menstrual cramps." (R. 467).[12] On August 28, 2008, Young complained to her doctor that she "has had two periods this month." (R. 468). On December 1, 2008, Young again complained of "bad PMS and menstrual cramps," and was diagnosed with dysmenorrhea and vaginitis. (R. 470-71, 476-77, 506-07). On December 29, 2008, she was again assessed with dysmenorrhea. (R. 480-81, 504-05). On January 29, 2009, Young again complained of painful menstrual cycles and was assessed with dysmenorrhea. (R. 482-83, 502-03). On February 23, 2009, she was again assessed with dysmenorrhea. (R. 485, 498-99, 576-77). On March 30, 2009, Young was again diagnosed with dysmenorrhea after she presented with complaints that she felt weak, was "passing large clots," and suffered from abdominal pain as well as chronic pelvic and low back pain. (R. 496-97, 574-75). On March 31, 2009, Young complained of "bad menstrual cramps" and breast tenderness during her period. (R. 495, 573).[13] On April 2, 2009, she was

---

[12]It is not clear from the record what diagnosis Young received on August 8, 2008, because the medical record appears to be missing the page that would include this information. (R. 467).

[13]It is not clear from the record what diagnosis Young received on March 31, 2009, because the medical record appears to be missing the page that would include this information. (R. 467, 573).

again assessed with dysmenorrhea.[14]  (R. 492-94; 571-72).

At step two of his analysis, the ALJ did not find Young's dysmenorrhea or menorrhagia to be severe impairments. The ALJ did not include any analysis whatsoever in his findings as to Young's impairments. The ALJ must state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments.  *See Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("What is required is that the ALJ state specifically the weight accorded to each item of evidence and why he reached that decision.").  The ALJ's complete silence regarding the basis for his determination as to Young's severe impairments does not satisfy the ALJ's obligation to state the reasons for his decision in understandable language, as required by law:

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based*.

42 U.S.C. § 405(b)(1) (emphasis added).

In particular, the ALJ's analysis at step two is devoid of <u>any</u> reference to Young's subjective statements at the administrative hearing regarding the limiting effects of her menstrual pain and excessive blood flow on her ability to function normally or leave the house.  It is clear that, if credible, those subjective statements are indicative of Young's

---

[14]Although it is not clear from the somewhat disorganized state of the treating physician's records as they are presented in the administrative record, the record may also indicate that on June 8, 2009, Young was again diagnosed with nausea and dysmenorrhea.  (R. 491-92; *but see* 568-570).

"abilities and aptitudes necessary to do most jobs,"  20 CFR § 404.1521, such as the ability to maintain attendance at work. At step two of the procedural analysis, the ALJ did not state any explicit reason for discrediting Young's subjective testimony about her menstrual disorders, and he did not explain why he did not find those disorders to be severe impairments despite well-documented diagnoses in the medical record.   "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted).   Accordingly, the ALJ erred as a matter of law  at step two of the analysis. *Wilson*, *supra*; *Cowart*, *supra*.

Further, the record contains substantial evidence that Young's menstrual disorders "'significantly limit[] [her] physical or mental ability to do basic work activities.'" *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (quoting 20 C.F.R. § 404.1520(c)).  The record does <u>not</u> contain substantial evidence to support a finding that Young's menstrual disorders, alone or in combination with other impairments, are such slight abnormalities "that [they] would clearly not be expected to interfere with [Young's] ability to work, irrespective of age, education or work experience." *McDaniel*, 800 F.2d at 1031.  Accordingly, the ALJ's failure to identify Young's dysmenorrhea and menorrhagia to be severe impairments is not supported by substantial evidence.

2.   **The ALJ erred at steps four and five of the analytical process by not considering Young's severe impairments of menorrhagia and dysmenorrhea without stating any basis for doing so.**

"The finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two." *Jamison v. Bowen*, 814 F. 2d 585, 588 (11th Cir. 1987); *see also Heatly v. Comm'r of Social Sec.*, 382 Fed. Appx. 823 (11th Cir. 2010) (panel decision). Here, the ALJ credited Young with severe impairments (other than menorrhagia and dysmenorrhea) at step two and proceeded forward with the sequential evaluation. Thus, although Young's menstrual disorders should have been included as a severe impairment at step two, the omission constitutes reversible error only if the ALJ failed in subsequent steps of his analysis to fully account for functional limitations arising from that impairment. *See Heatly*, 382 Fed.Appx. 823; *see also Burgin v. Comm'r of Social Sec.*, 420 Fed. Appx. 901, 903 (11th Cir. 2011) (panel decision) ("Even assuming the ALJ erred when he concluded [the claimant's] edema, sleep apnea, and obesity were not severe impairments, that error was harmless because the ALJ considered all of his impairments in combination at later steps in the evaluation process."); *Delia v. Comm'r of Social Sec.*, 433 Fed. Appx. 885, 887 (11th Cir. 2011) (panel decision) ("Because the ALJ gave full consideration to the consequences of [the claimant's] mental impairments on his ability to work at later stages of the analysis, the error [in failing to identify the claimant's mental impairments as a severe disability] at step two was harmless and is not cause for

19

reversal.").

To establish a disability based on complaints of pain and other subjective conditions, "the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). If the ALJ decides not to credit such testimony, "he must discredit it explicitly . . . and articulate explicit and adequate reasons for doing so." *Id*. (citations omitted).

As noted in Part IV. B.1. of this opinion, the record contains subjective testimony of pain and other limitations due to severe menstrual pain, cramping, and excessively heavy bleeding, and evidence of underlying medical conditions (dysmenorrhea and menorrhagia) that could reasonably give rise to those subjective complaints. Although the ALJ completely ignored Young's subjective testimony about the limiting effects of her menorrhagia and dysmenorrhea, the ALJ did acknowledge the existence of the underlying medical conditions at steps four and five of the sequential evaluation. (R. 67, 69, 70). Unfortunately, the ALJ's "discussion" of Young's dysmenorrhea and menorrhagia at steps four and five consists of

simply noting the presence of these disorders while regurgitating large portions of medical records and physicians' notes.  (R. 67, 69, 70) (noting that "[t]he medical evidence establishes a history of both physical and mental limitations" including dysmenorrhea and menorrhagia).[15]  What is *not* found in the ALJ's "discussion" is any analysis whatsoever with respect to the limiting effects of these disorders, or any acknowledgment or explanation with respect to Young's subjective complaints about the limiting effects of severe menstrual pain and excessive bleeding.

Because the ALJ did not mention Young's subjective testimony about the limiting effects of her dysmenorrhea or menorrhagia, or state any explicit reason why he did not account for it in determining her residual functional capacity or when posing questions to the VE, it is not clear from the ALJ's opinion whether he simply forgot to consider that evidence, or whether he intentionally discredited her testimony while neglecting to explain his reasons for doing do.  Either way, the ALJ committed reversible error.  *See* 20 C.F.R. 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware . . . when we assess your residual functional capacity."); *Wilson*, 284 F.3d at 1227 ("In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a

_____

[15]At step four of the analytical process, the ALJ also incorrectly stated, in the same sentence in which he noted Young's diagnosis of "dysmenorrheal" [sic], that Young had been diagnosed with "postmenopausal syndrome."  (R. 67).  A diagnosis of postmenopausal syndrome is not supported by the medical record and, furthermore, is blatantly inconsistent with Young's testimony and the medical record, which establishes that Young experiences heavy menstrual cycles, sometimes more than once a month, and suffers from menorrhagia, dysmenorrhea, and PMDD.
*See* http://www.webmd.com/menopause/guide/health-after-menopause  ("A woman is considered to be postmenopausal when she has not had her period for an entire year.").

hypothetical question which comprises all of the claimant's impairments."); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991) ("If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true."); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (holding that an ALJ is required to "state specifically the weight accorded to each item of evidence and why he reached that decision").

The court notes that, in general terms, the ALJ did dismiss Young's subjective testimony about the limiting effects of her collective physical impairments[16] with the following comments:

> It is noted that the claimant has medical insurance (Medicaid); however there is little treatment and no prescription medications since April 2009 as per her hearing testimony. She testified that she takes only over the counter medications. Ms. Young testified that she is able to drive for short distances; performs some household chores; does some lawn work; shops; has people visit and attends church. I find that these activities are inconsistent with a finding of disability.
>
> . . . .
>
> The claimant is able to care for children without assistance,[17] perform household chores, drive, and attend church. I note that caring for children can be demanding both physically and emotionally and Ms. Young testified she is able to do this with no assistance and is able to help with homework. I have noted that although the claimant has been seen by her treating physician

---

[16]The ALJ's summary of Young's hearing testimony contains no mention of her subjective statements regarding dysmenorrhea and menorrhagia.  (R. 65.)

[17][At the time of the hearing in this case, Young's children were aged 11, 13, and 19. (R. 28).]

regularly, there have been no restrictions placed on her activities.

(R. 70).

Despite the lack of any explicit reference by the ALJ to Young's testimony about her dysmenorrhea and menorrhagia (as opposed to her other alleged sources of pain, such as degenerative disc disease and chronic pain syndrome), and even if the court were to assume that the ALJ's generic comments discounting her pain symptoms were directed toward Young's testimony about the limiting effects of severe menstrual pain and bleeding, the ALJ's comments do not constitute an "adequate and explicit basis" for discrediting that particular testimony. *Brown*, 921 F.2d at 1236. At the September 17, 2009 hearing before the ALJ, Young testified that she had not taken prescription narcotic medication[18] since April 2009. (R. 34-35). On June 8, 2009, Young reported to her physician that she was taking skelaxin and pravastatin, and she was prescribed additional medications.[19] (R. 491-92; 568-70). On April 2, 2009, Young was diagnosed with dysmenorrhea and nausea; the physician did not prescribe narcotic medications or benzodiazipines, but did prescribe ketoralac. (R.

---

[18]Young initially testified that she stopped taking prescription medicines in April 2009, but then qualified that testimony to clarify that she had stopped taking prescription narcotics, benzodiazipines, and morphine, in general and particularly for her neck and back, but that she had taken other prescriptions since April 2009. (R. 33-34, 39-40). She admitted to taking prescription pain medication "for [her] teeth" and did not testify with any specificity about medication for her menorrhagia and dysmenorrhea. (R. 33-34).

[19]Because the records are disorganized, it is difficult to determine whether, on June 8, 2009, Young was prescribed promethazine and ketoralac (R. 491-92) or whether she was prescribed citalopram and fluphenazine (R. 568-69). What is clear, however, is that she was prescribed additional medications on that date, contrary to the ALJ's finding that she ceased taking any prescription medications in April 2009.

572, 494).  On April 2, 2009, and possibly again on June 8, 2009,[20] Young was diagnosed with polydrug abuse and advised that narcotic prescription medications and benzodiazepines would not be prescribed again unless the took and passed drug tests.  (R. 570-71; 491-94).

In other words, contrary to the ALJ's assertions, the record does not support a finding that Young ceased taking prescription medication of any kind in April 2009, or that she no longer suffered from or sought treatment for the pain and limiting effects of her severe menstrual disorders.  Alternatively, to the extent that Young ceased taking narcotics or benzodiazepines or other prescription medications in April 2009, the record supports her hearing testimony (R. 33-34, 39-40) in which she stated that she ceased taking those drugs in April 2009 due to concerns about dependency.  Nothing in the record supports the ALJ's assumption that she stopped taking those medications because she no longer needed them.  Additionally, the court notes that Young did *not* testify that she was able to care for children, drive, perform some household chores, do lawn work, shop, have people visit, or attend church during those times when her dysmennorhea and menorrhagia became severe; rather, she testified that, during days when these impairments were most severe, she felt weak, suffered from excessive bleeding, was unable to leave the house, and would have to lie down with a hot water bottle in an attempt to relieve her symptoms. (R. 45-47).

Accordingly, the court concludes that the ALJ erred as a matter of law by failing to fully credit Young's subjective testimony about the limiting effects of her menorrhagia and

---

[20]The medical records are somewhat disorganized.

dysmenorrhea without stating an "adequate and explicit" basis for doing so as the law requires. *Brown*, 921 F.2d at 1236.  Moreover, an ALJ's "[f]ailure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson* 284 F.3d at 1225.  Therefore, this case is due to be remanded for the ALJ to consider whether Young is disabled when all of her impairments are taken into consideration, including those impairments that are caused by dysmenorrhea and menorrhagia.  *See  See* 20 C.F.R. 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware ... when we assess your residual functional capacity."); *Wilson*, 284 F.3d at 1227 ("In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.").

## V. CONCLUSION

Accordingly, this case will be reversed and remanded to the Commissioner with instructions that the Commissioner must  (1) accept as true Young's subjective testimony about her menstrual pain and excessive bleeding, and her testimony as to the number of days per month that she must be absent from work due to her menstrual flow, and (2) consider, at step five of the analytical process, whether Young is disabled when all of her impairments are taken into consideration, including those impairments that are caused by dysmenorrhea and menorrhagia.  It is further

**ORDERED** that, in accordance with *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273,

1278 n. 2 (11th Cir. 2006), the plaintiff shall have sixty (60) days after she receives notice

of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406(b).

*See also Blitch v. Astrue*, 261 Fed. Appx. 241, 242 n.1 (11th Cir. 2008).

A separate final order will issue.

Done this 29th day of March, 2013.

_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE